IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARYSABEL VASQUEZ,            §
                              §
          Plaintiff,          §
                              §
VS.                           §   CIVIL ACTION H-11-4086
                              §
WELLS FARGO BANK, N.A., BARRETT §
DAFFIN FRAPPIER TURNER & ENGEL, §
L.L.P., and LEE STEVENSON, JR., §
                              §
          Defendants.         §

**OPINION AND ORDER OF REMAND**

Pending before the Court in the above referenced action to set aside foreclosure sale or to recover damages relating to Plaintiff Marysabel Vasquez's allegedly wrongfully foreclosed real property at 3806 Flatwood Drive, Katy, Texas 77449 ("the property"), removed from state court, are Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo's" or "Defendants'"[1]) (1) motion to expunge *lis pendens* (instrument #10) on that property and (2) motion for summary judgment and motion to dismiss with prejudice (#11).

The Second Amended Petition[2] asserts only state-law causes of

---

[1] Defendant Barrett Daffin Frappier Turner & Engle, L.P. is a Texas limited liability partnership and Wells Fargo's foreclosure representative and substitute trustee, while Defendant Lee Stevenson, Jr. is a citizen of Texas and Wells Fargo's eviction attorney.  #1 at p. 2.  The parties treat the three Defendants as one.

[2] At the Court's request, Plaintiff has filed a copy of the Second Amended Petition (now instrument #27), which she had filed on October 14, 2011 while the case was in state court prior to removal.

action for wrongful foreclosure, common law fraud, fraudulent misrepresentation, statutory fraud, breach of contract, negligence, negligent misrepresentation, gross negligence, violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Debt Collection Act ("TDCA"). Originally filed in state court, this case was removed by Wells Fargo on the grounds that the state-law causes of action were preempted by the Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and its implementing regulation, 12 C.F.R. § 560.

### Allegations of Plaintiff's Second Amended Petition

The Second Amended Petition asserts the following. Plaintiff purchased the property on March 4, 2003 for $135,025.00. She made a 20% cash-down payment of $27,005.00 and borrowed the balance of $108,020.00 from World Savings Bank FSB, evidenced by  a note entitled "Adjustable Rate Mortgage Note Pick-A-Payment Loan" ("the note").[3] The note is secured by a Deed of Trust[4] also dated March 4, 2003. Plaintiff's real property taxes were escrowed and paid by the Bank, beginning in 2004. Over time, different entities, including Wachovia and Wells Fargo (collectively, "the Bank"), were authorized to and did collect her mortgage payments.[5]

---

[3] A copy of the note is attached as Exhibit A to Defendant's motion for summary judgment (#11).

[4] Exhibit B to Defendant's motion for summary judgment (#11).

[5] Defendant explains that on December 31, 2007 World Savings changed its name to Wachovia Mortgage ("Wachovia").  #11 at p. 8.

When Plaintiff closed on the property on March 5, 2003, the bank presented Plaintiff with a number of documents for her signature. She claims that the HUD closing statement incorrectly identified the seller's address and the property as being in Houston, not Katy, with the wrong zip code, 77024. The same was true of the Deed of Trust. She also claims that the Bank's agents represented that the loan was a fixed rate loan, but she later discovered it was an adjustable rate loan after speaking with representative Gerardo on August 12, 2004 after she called customer service to ask about the unexpected increases in her loan payments. She asserts that to convert the loan to a fixed interest rate involved "draconian requirements."

The Notice of Fire/Hazard Insurance Requirements, dated March 5, 2003, required Plaintiff to maintain insurance on the property and provide the Bank with proof. Plaintiff purchased the insurance and sent proof to the Bank, but each year the Bank claimed it had not received the proof of insurance, so Plaintiff would keep re-sending it and the Bank would claim it never received it. Furthermore, the Bank year after year purchased forced-place

---

On November 1, 2009 Wachovia merged into Wells Fargo. *Id.* It is undisputed that Wells Fargo is the owner and holder of the note. As a federal savings bank, World Savings, which originated the loan in 2007, was governed by HOLA. "Where a national association [such as Wells Fargo] acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA." *Haggarty v. Wells Fargo Bank, N.A.*, 2011 WL 445183, *4 (N.D. Cal. Feb. 2, 2011); *DeLeon v. Wells Fargo* Bank, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010).

insurance on top of that already purchased by Plaintiff, and each time that added $250 to Plaintiff's monthly mortgage payment.  She identifies as the cause of the problem that the correct address on the proof of insurance did not match the incorrect property address on file with the Bank.  Plaintiff pointed out the error to the Bank several times, but it continued to occur year after year.

In 2009 Plaintiff fell behind on her mortgage payments because her husband fell ill and lost his job.  In February 2010 she called the Bank to see how she could work out the arrearage.  The Bank representative offered a loan modification, and told her that if she did not qualify, she could apply for a payment plan.  The representative interviewed her over the telephone and found that she pre-qualified for the modification.  Plaintiff sent the Bank documents requested by the representative.  But on March 15, 2010, the Bank advised her that she did not qualify for a modification.

The following month Plaintiff called the Bank and was told that the property was about to go to foreclosure.  The Bank representative told her that she should immediately make a payment by mail or bank transfer.  When Plaintiff asked if the payment would be accepted, the representative assured her it would even if it was not for the full amount of the arrearage.  So on April 22, 2012, Plaintiff made a bank transfer of $3,085.00 to cover part of the arrearage, which through February 2010 amounted to $6,950.19.

In May 2010, the Bank returned that transfer of funds. Plaintiff called and was transferred to the foreclosure department. She told the representative that she had $5,000.00 available to pay for the arrearage and was told that the Bank would accept that amount for partial payment and provide a subsequent payment plan if Plaintiff provided a hardship letter indicating why she had fallen behind, proof that she had the $5,000.00, and proof of income and bank statements. Plaintiff sent these requested documents. Also, as the representative requested, Plaintiff subsequently called the foreclosure department every week. She called the first week after sending in these documents and was told by a representative that he did not find anything in her file. Plaintiff re-sent all the documents and continued to call every week. In June 2010, a representative of the foreclosure department told her that approval of the payment plan was still pending. A week later a representative told Plaintiff that she did not qualify for a payment plan because the Bank's computer system showed that she was "in process of modification." She informed the representative that the Bank had already denied her request for modification and asked again for help with her arrearage, e.g., adding it to the back of the loan or to future payments. The representative said she would have to call back at a later date to revisit the payment plan option. On June 21, 2010, the Bank sent her a letter indicating it would help and stating that she could apply for a loan

modification.

In mid to late June Plaintiff received a letter ("acceleration letter") stating that payment of the past due balance on the debt has not been received by the mortgage servicer and therefore the mortgagee had elected to accelerate the maturity of the debt. Attached to the acceleration letter was a Notice of Substitute Trustee Letter ("notice of sale"). Both these documents erroneously listed the property as in "Houston, Texas 77024." The Bank posted the notice of sale with the incorrect address at the Harris County's Office of Real Property Records. Foreclosure Information & Listing Service, Inc. ("FILS") obtained the incorrect address from this document and incorporated it into its report, "Foreclosure Posting List Harris County, A List of Properties Scheduled for Mortgage Delinquency Foreclosure *July 6, 2010*" ("Posting List"), on which foreclosure buyers rely to determine the properties to purchase at each foreclosure sale. Attorneys, companies, and non-profit entities use the list to contact owners of the properties and provide them with options to and protection against foreclosure. Because of the error in the address, the Posting List did not include Plaintiff's property in any comprehensible, searchable, or researchable format. Plaintiff did not receive a single letter, advertisement, contact or visit from anyone with offers of services.

On July 3, 2010 Plaintiff called the Bank and again asked if

there was some other solution to the arrearage problem.  She then learned for the first time that her house was scheduled for foreclosure sale at 10:00 a.m. on July 6, 2010.  On Sunday, July 4, 2010 she called the bank and requested a reinstatement quote so the she could make a payment and save the house from foreclosure.  A representative told her to call the Bank's attorneys on a weekday, but not the next day because they were closed for the holiday.  At 9:00 a.m. on Monday, July 5, 2010 she called the Bank's foreclosure attorneys.  A representative of the office told Plaintiff it would take twenty-four hours to get a reinstatement quote and that he would call her back.  The foreclosure attorneys never called Plaintiff back with a reinstatement quote.

On July 6, 2010 Plaintiff attended the foreclosure sale at the family courthouse.  She told the trustee that she was waiting for a reinstatement quote.  The Bank bought the property at the foreclosure sale, and shortly thereafter the Bank forcefully evicted Plaintiff from the property.  At the time of the foreclosure sale the Bank did not have an interest recorded with Harris County Real Property Records and therefore did not have the legal right or authority to request or to go ahead with the foreclosure sale.

Regarding her wrongful foreclosure cause of action, Plaintiff alleges vaguely that there was a defect in the foreclosure sale that caused a grossly inadequate selling price and zero attendance

-7-

at the sale aside from the Bank, resulting in economic damages to Plaintiff.  She maintains, "Because all mortgages are upside down, and because all property values have devalued tremendously, it would be impractical and impossible to prove a grossly inadequate selling price."

Regarding her common law fraud, fraudulent misrepresentation, and statutory fraud claims, Plaintiff identifies the misrepresentations as including but not limited to the following: (1) the loan had a fixed interest rate; (2) Plaintiff could convert her adjustable rate to a fixed rate; (3) Plaintiff would be given a workout but for the "in modification" annotation in the Bank's computer; (4) Plaintiff would be given a reinstatement quote so that she might cure the arrearage and stop the foreclosure; (5) the foreclosure of July 6, 2010 would not occur because of the pending workout and/or reinstatement quote; and (6) the Bank which performed the foreclosure sale had the legal standing and authority to do so.  Plaintiff insists these representations were material and false and that the Bank's representatives made them knowing the Bank was not going to provide a reinstatement quote to Plaintiff and that it was not going to stop the foreclosure sale or made the misrepresentations with reckless disregard as to whether they were true and with the intent to deceive Plaintiff to induce her to execute the note and remain in the property and not take effective action to cure her default and reinstate the loan.  She claims she

-8-

justifiably relied on these misrepresentations and as a result suffered financial loss and other damages.

Relating to her breach of contract claim, Plaintiff claims that she complied with all the terms and conditions of the contracts entered into by the parties, but that Defendants breached them by foreclosing on the property and by failing to correct the property address despite several requests by Plaintiff. The error caused Plaintiff to pay for extra unnecessary insurance premiums and resulted in defective foreclosure notices and a defective foreclosure sale.

Plaintiff alleges that Defendants' negligent acts, misrepresentations, and conduct proximately caused losses and damages to Plaintiff, who did not contribute to or cause the occurrence or resulting losses and damages.

Plaintiff contends that Defendants violated § 1750(1), § 17.46(b)(22) and (24), and § 17.50(3) of the DTPA when the Bank engaged in false, misleading or deceptive acts or practices that Plaintiff relied upon to her detriment and failed to disclose material information.

Plaintiff charges that the Bank violated the TDCPA by such unreasonable debt collection practices as failing to give credit for Plaintiff's self-placed insurance, promising but failing to give Plaintiff a reasonable opportunity to convert her adjustable rate to a fixed rate, wrongfully charging her for forced-placed

insurance, failing to properly account for Plaintiff's payments, using a fake address in correspondence and other important documentation, using a fake address in the notices of acceleration and foreclosure sale, promising hope of a modification agreement or other type of workout without intending to provide it, claiming to have lost documents and files and re-asking and harassing Plaintiff for the same information and documents over and over again, promising hope of a reinstatement yet never providing a reinstatement quote and not giving an opportunity to tender reinstatement funds, accelerating the note, posting for foreclosure, and proceeding with foreclosure when Defendants had no right to do so and when they knew they had thwarted Plaintiff's good faith effort to cure the default, reverse the acceleration, and stop the foreclosure.  As a result Plaintiff and her credit were further damaged by the foreclosure.  She asserts that Defendants used unfair or unconscionable means by collecting or attempting to collect interest on a charged fee or expense incidental to the allegation that was not authorized by the terms of the parties' contract in violation of TDCPA § 392.303; that Defendants threatened to take action prohibited by law, including threatening wrongful foreclosure in violation of § 392.301, effecting wrongful foreclosure on her home, and evicting her from her home; and that Defendants misrepresented the character, amount, or extent of her debts in violation of § 392.304.

## Subject Matter Jurisdiction

"Although the question of subject matter jurisdiction is not before the court on a motion to dismiss, a district court has 'a duty to establish subject matter jurisdiction over a removed action *sua sponte*, whether the parties raised the issue or not.'" *Nixon v. Vaughn*, ___ F. Supp. 2d ___, 2012 WL 4961461, *3 (W.D. La. Oct. 16, 2012), *quoting United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 967 (9th Cir. 2004).  Title 28 U.S.C. § 1447(c) states, "If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  The removal statute is strictly construed, and any doubts concerning removal are to be construed against removal and in favor of remand to state court. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002), *citing Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  Strict construction is required because "removal jurisdiction raises significant federalism concerns." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988), *aff'd*, 503 U.S. 131 (1992).  The party removing the action bears the burden of establishing federal jurisdiction. *Id.*

As part of its motion for summary judgment and motion to dismiss, Wells Fargo argues that HOLA preempts Plaintiff's claims for breach of contract, wrongful foreclosure, negligence, and violations of the TDCPA, all of which should therefore be

dismissed.   The issue of preemption has greater import here than with respect to the pending motion because this case was removed on federal question jurisdiction based on complete preemption by HOLA. In the context of removal, the doctrine of ordinary preemption, "which "simply declares the primacy of federal law, regardless of the forum or the claim" and has been categorized as a federal defense to allegations that will not provide a basis for removal, must be distinguished from the doctrine of complete preemption, which is a "jurisdictional doctrine" that treats a plaintiff's state complaint as a federal claim from its inception, thus permitting removal. *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005), *citing inter alia Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987).   The jurisdictional question of complete preemption is distinct from the substantive preemption defense. *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190, 1197 (N.D. Cal. 2012), *citing Whitman v. Raley's Inc.*, 886 F.2d 1177, 1181 (9th Cir. 1989). The Supreme Court has been reluctant to find complete preemption and thus far has only found it in three statutes:   the usury provisions of the National Bank Act, *Beneficial Nat'l Bank*, 539 U.S. at 10-11; the Employee Retirement Income Security Act of 1974 ("ERISA"), *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-67 (1987); and the Labor Management Relations Act*, Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968). *Id.*; *Beneficial Nat'l Bank,* 539 U.S. at *7-8.   These statutes are

distinctive because they "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank*, 539 U.S. at 8.

A defendant may remove a civil action filed in state court to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). United States District Courts have original subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, "we examine the 'well pleaded' allegations of the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States.'" *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003), *citing Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Generally, in the absence of diversity jurisdiction, "a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.; Hoskins v. Bekins Van Lines*, 343 F.3d 769 (5th Cir. 2003). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)(Under the well-pleaded

complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  A federal question "is presented" when the complaint invokes federal law as the basis for relief.  It is not sufficient that the facts alleged supporting a state law claim also support a federal claim.).  Nor is it sufficient for the defendant to show that there is a federal defense, including the defense of preemption, to a plaintiff's state law claims.  *Hoskins*, 343 F.3d at 772; *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995).

"The [well-plead complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Id.*  This exception, known as the artful pleading doctrine, allows the court to look beyond the face of plaintiff's complaint to determine if federal law "so forcibly and completely displaces[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all."  *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995).

An exception to the well-pleaded complaint rule is the doctrine of complete preemption:  "'when a federal statute wholly displaces the state-law cause of action through complete preemption,' the state claim can be removed."  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207-08 (2004), *quoting Beneficial Nat'l*

*Bank*, 539 U.S. at 8.[6]  Complete preemption permits removal because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id*.

The Fifth Circuit has held that to establish complete preemption, the defendant must demonstrate that "'(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is clear Congressional intent that claims brought under the federal law be removable.'" *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008), *citing Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000), *cert. denied*, 531 U.S. 1012 (2000).  Subsequently this test

-----

[6]  In *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000), *cert. denied*, 531 U.S. 1012 (2000), the Fifth Circuit observed,

> Ordinarily, the term federal preemption refers to ordinary preemption, which is a federal defense to the plaintiff's suit and may arise either by express statutory term or by a direct conflict between the operation of federal and state law.  Being a defense, it does not appear on the face of a well-pleaded, and thus does not authorize removal to a federal court.  By way of contrast, complete preemption is jurisdictional in nature rather than an affirmative defense to a claim under state law.  As such, it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims for relief or if the federal issue is initially raised solely as a defense.

-15-

was clarified in *Beneficial Nat'l Bank*, which modified the last prong from Congressional intent that the claim be removable to Congressional intent that the federal action be exclusive. *Id.*, *citing Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 553 (5th Cir. 2008), *citing Beneficial Nat'l Bank*, 539 U.S. at 11. *See also Hoskins*, 343 F.3d at 776; *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 544 (5th Cir. 2005).

Moreover, the Fifth Circuit has, at minimum, as a threshold requirement for determining in a federal statute that Congress intended for federal courts to adjudicate state-law causes of action, specifically that the federal statute must provide a private federal remedy. *Willy v. Coastal Corp.*, 855 F.2d at 1169, *citing Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 813-16 (1986); *Hoskins*, 343 F.3d at 775-76.

"Thus a state claim may be removed to federal court in only two circumstances--when Congress expressly so provides, . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank*,539 U.S. at 8.

There is case law concluding that neither HOLA or the regulations issued pursuant to it by the Office of Thrift Supervision ("OTS")[7] possess the "unusually 'powerful' preemptive

_____

[7] On July 21, 2011 the Dodd-Frank Wall Street Reform Act and Consumer Protection Act of 2010, 12 U.S.C. 5412, transferred oversight of savings and loans to the Office of the Comptroller of

force" required to invoke the complete preemption doctrine.   The statute does not expressly mention preemption, so the  courts have looked at its implementing regulations.

A number of them that have done so have concluded that HOLA does not completely preempt state law claims.   Any preemptive effect would be based on 12 C.F.R. § 560.2.[8]   Section 560.2(a) expressly states that "OTS hereby occupies the entire field of lending regulation for federal savings associations" and that "federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except as to the extent provided in paragraph (c) of this section

---

the Currency ("OCC").   It also narrowed the preemptive reach of HOLA.   *See, e.g., Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346, *9 (S.D. Fla. Oct. 14, 2011).   Because Dodd-Frank does not apply here, the Court does not discuss it further.

[8]   The United States Supreme Court has held, "Federal regulations have no less pre-emptive effect than federal statutes." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).   *But see Beard v. Aurora Loan Services, LLC,*, No. C.A. C-06-1142, 2006 WL 1350286, *5 n.7(S.D. Tex. May 17, 2006)("Nor can federal regulations accompanying HOLA be the basis for a private right of action."), *citing Casas v. American Airlines, Inc.*, 307 F.3d 517, 520 (5th Cir. 2002)("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not . . . . [I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."), *quoting Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)("language in a regulation [cannot] conjure up a private cause of action that has not been authorized by Congress").   As will be discussed, HOLA does not provide a private cause of action.

or § 560.110 of this part."  The key question is not whether HOLA preempts state law by occupying the field (ordinary preemption), but whether it provides the "exclusive cause of action" for the claims asserted by Plaintiff.

Section 560.2(b), "Illustrative examples," recites,

Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

(1) Licensing, registration, filings, or reports by creditors'

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or

-18-

other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Usury and interest rate ceilings to the extent provided in 12 U.S.C. § 1735f-7a and part 590 of this chapter and 12 U.S.C. § 1463(g) and § 560.110 of this part; and

(12) Due-on-sale clauses to the extent provided in 12 U.S.C. § 1701j-3 and part 591 of this chapter.

The critical portion of the regulation, § 560.2(c), addresses "State laws that are not preempted.  State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:"

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. § 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise

-19-

contrary to the purposes expressed in paragraph (a) of this section.

While the number of opinions addressing HOLA and complete preemption is limited, a substantial percentage of them have concluded that HOLA and its implementing regulation do not have the effect of complete preemption for purposes of removal because the statute does not completely preempt state law. *See, e.g., Larrieu v. ING Bank, FSB*, No. C 11-6167 SI, 2012 WL 832504, *2 (N.D. Cal. Mar. 12, 2012); *Wilburn v. INDYMAC Bank, F.S.B.*, No. Civ. 2:10-3384 WBS CMK, 2011 WL 2174608, *2 & n.2 (E.D. Cal. June 1, 2011)(The key question for complete preemption is not whether HOLA preempts state law by occupying the field of regulation but rather whether the federal statute provides the exclusive cause of action for the claims asserted); *Bazan v. U.S. Bancorp*, No. 10-CV-03265, 2011 WL 566804, at *4 (N.D. Ca. Feb. 14, 2011)("These courts have pointed out that the OTS regulation includes an express savings clause that preserves broad categories of state laws from preemption 'to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent' with the preemption regulations.  Because the OTS regulation explicitly preserves certain state-law claims, these courts have found that 'HOLA does not have the 'unusually powerful preemptive force' that goes beyond merely preempting state law claims to also permit removal.'"); *Szarzaba v. Aurora Loan Servs.*, No. 10cv1569, 2010 WL 3385062, *3 (S.D. Cal. Aug. 26, 2010); *Pazos v. Wachovia Mortg.*,

No. CV 10-2731, 2010 WL 3171083, *3-4 (C.D. Cal. Aug. 10, 2010)(based on the savings clause's language, "HOLA does not have the unusually powerful preemptive force that goes beyond merely preempting state law claims to also permit removal"; *Caampued v. First Fed. Bank of Cal.*, No. C 10-0008, 2010 WL 963080, *2 n.1 (N.D. Cal. Mar. 16, 2010); *Cole v. Pinter*, No. 08-6108, 2009 WL 1441470 *2 (W.D. Ark. May 21, 2009)("HOLA satisfies none of the requirements for complete preemption. First, HOLA contains no private right of action and only provides for government enforcement. Second there is no manifestation of Congressional intent to allow removal. Finally, no provision of HOLA or the regulations promulgated thereunder specifically addresses the mechanics of foreclosure."); *Bolden v. KB Home*, 618 F. Supp. 2d 1196, 1205 (C.D. Cal. 2008)("the plain language of the regulation shows that Congress did not intend for the HOLA to completely preempt all state law lending regulation"); *Beard v. Aurora Loan Services, LLC,*, No. C.A. C-06-1142, 2006 WL 1350286, *5 (S.D. Tex. May 17, 2006)(finding no complete preemption because defendant failed to show HOLA contained a private, civil enforcement action applicable to facts alleged in the petition or that Congress intended the federal remedy to be exclusive in light of § 560(c)); *McKenzie v. Ocwen Federal Bank FSB*, 306 F. Supp. 2d 543, 544-45 (D. Md. 2004).

Furthermore, with regard to the Fifth Circuit's requirement of

a private federal remedy, this Court has not found any cases
finding that HOLA contains a private civil enforcement provision
applicable to the facts alleged in Plaintiff's Second Amended
Petition.[9]  Instead, a number of courts have found that HOLA has no
express language or other evidence of Congressional intent to
provide a private right of action.  *See, e.g., Till v. Unifirst
Federal Savings & Loan Ass'n*, 653 F.2d 152, 160 (5th Cir. 1981);
*Taylor v. Citizens Fed. Sav. & Loan Ass'n*, 846 F.2d 1320, 1323-24
(11th Cir. 1988)[10]; *Burns Intern., Inc. v. Western Savings and Loan*

---

[9] Judge Janis Jack noted HOLA contained a single civil
enforcement provision in HOLA, 12 U.S.C. § 1463(g)(1)-(2),
providing for private suits against savings association for
charging excessive interest. *Beard v. Aurora Loan Services, LLC*,
No. C.A. C-06-1142, 2006 WL 1350286, *5 (S.D. Tex. May 17, 2006).
Like the plaintiff in that case, Vasquez has not alleged a usury
claim here.

[10] The panel in *Taylor* also pointed to, and agreed with, an
earlier Fifth Circuit case, *Till v. Unifirst Federal Savings & Loan
Ass'n*, 653 F.2d 152, 160 (5th Cir. 1981)(in which two mortgagors
asserted claims against a federal savings and loan association for
violation of HOLA, breach of contract, fraud, conversion, and
breach of fiduciary duty).  The Eleventh Circuit highlighted that
in *Till, id.*, the Fifth Circuit "expressly found that the
administrative scheme of enforcement provided in HOLA 'is strong
evidence that Congress intended the administrative remedy to be
exclusive.'" 846 F.2d at 1323.  (The Eleventh Circuit is bound by
that opinion because it was issued before the Eleventh Circuit
split from the Fifth Circuit.).  Applying *Cort,* the *Taylor* cited
several appellate decisions from the Second and Sixth Circuit
upholding a private right of action under HOLA, but pointed out
that they were handed down before *Cort* and did not undertake
anything like the *Cort* analysis. 846 F.2d at 1323.  The Eleventh
Circuit concluded, "Because we find no express language or other
evidence of congressional intent to provide a private right of
action, we must affirm" the district court's determination that the
mortgagor did not have an implied cause of action to enforce HOLA.
*Id.* at 1323-24.

*Ass'n*, 978 F.2d 533, 535-36 (9th Cir. 1992); *Reschini v. First Fed. Sav. & Loan Ass'n of Indiana*, 46 F.3d 246, 255 (3d Cir. 1995)("Reschini has not identified any provision of HOLA or the National Housing Act that indicates congressional intent 'to create, either expressly or by implication,' a private cause of action.  Our own examination has been no more fruitful."); *Beard v. Aurora Loan Services, LLC*, 2006 WL 1350286, *5 ("Without a private, federal cause of action for the conduct alleged in Plaintiff's petition, Aurora cannot rely on complete preemption to support federal jurisdiction.").

Accordingly, the Court concludes that this case was improperly removed because HOLA does not completely preempt the Second Amended Petition's purely state-law claims.  Therefore the Court

ORDERS that this case is REMANDED under 28 U.S.C. § 1447(c) to the  County Civil Court At Law No. Four of Harris County Texas.

**SIGNED** at Houston, Texas, this  8th  day of   January  , 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE